UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE LEDEZMA, CDCR #H-84273, <br><br>                              Plaintiff, <br><br> v. <br><br> M. RAMIREZ, Reviewing Authority; <br> M. PALMER, Reviewing Authority, <br><br>                              Defendants. | Case No.: 3:25-cv-01585-BTM-MMP <br><br> **ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)** <br><br> **[ECF No. 3]** |

Plaintiff Joe Ledezma, who is proceeding *pro se* and incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, has filed a civil rights Complaint ("Compl.") pursuant to 42 U.S.C. § 1983 (ECF No. 1), together with a Motion to Proceed *In Forma Pauperis* ("IFP") (ECF No. 3). Ledezma claims two prison grievance officials at RJD refused to timely process his grievances requesting a kosher or religious meat alternative diet accommodation after he converted to Judaism. *See* Compl. at 2–5. Ledezma seeks both compensatory and punitive damages, attests to have exhausted his administrative remedies before filing suit, and requests to be provided a kosher diet. *Id.* at 6.

For the reasons explained, the Court grants Ledezma leave to proceed IFP, but screens his Complaint *sua sponte* and dismisses it for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## I.    IFP MOTION

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 14051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113,

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, ... an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Here, Ledezma's IFP motion complies with both 28 U.S.C. § 1915(a)(1) and (2). In support, he has submitted two copies of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Trust Account Statement Report. *See* ECF Nos. 2, 4; *see also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. The certified statement submitted in support of his July 24, 2025 IFP motion shows Ledezma maintained an approximate average monthly balance of $1,092.12 in his prison trust account, and had approximately $1,345.50 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. At the time of filing, however, Ledezma's available balance had decreased to $374.12. *See* ECF No. 4 at 2, 4.

Accordingly, the Court **GRANTS** Ledezma' Motion to Proceed IFP (ECF No. 3) and assesses an initial partial filing fee of $269.10 pursuant to 28 U.S.C. § 1915(b)(1). This initial fee need be collected only if sufficient funds are available in Ledezma's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is

ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Ledezma is a prisoner and proceeding IFP, his Complaint requires an initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for dismissal for prisoner claims at screening is the 'same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.'" *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8(a) and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

In addition, in determining whether a plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426

(9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

### B. Factual Allegations

Ledezma claims that after his wife converted to Judaism, he too embarked on a "spiritual journey" to convert and comply with the "laws set forth in the Torah pertaining to the type of foods to be consumed." *See* Compl. at 3. To that end, Ledezma claims to have submitted two "CDCR 3030 Religious Meat Alternative or Religious Kosher Diet Request Forms" via the institutional mail, one in April 2024, and another on July 20, 2024, but he "received no reply." *Id.* at 3, *see also* ECF No. 1-2 at 1–3, 5.

On September 19, 2024, after waiting a "reasonable amount of time" without a response to his July 20, 2024 request "to be added to the kosher meals list," Ledezma filed a CDCR 602 grievance claiming that the failure to provide him with a "religiously mandated diet" impeded his right to practice his religion and to "comply with [his] religious beliefs." *See* Compl. at 3; *see also* ECF No.1-2 at 5–6, 10-11. Ledezma further claims that by "just ignoring [his] requests," failing to perform their "assigned duties," and "through the manipulation of [] grievance procedures," Defendants Palmer and Ramirez, whom he identifies as RJD's grievance "reviewing authorities," deprived him of his "choice of religion" and "treat[ed] [him] differently than other inmates" in the same facility who "request[ed] a religiously mandated diet." *See* Compl. at 2, ECF No. 1-2 at 10–11, 14–15. Ledezma claims the "continual refusal to provide [him] the same religiously mandated diet [] provide[d] [to] numerous other inmates who practice Judaism at th[e] same facility" constituted "deliberate indifference" under the Eighth Amendment, violated his right to equal protection under the Fourteenth Amendment, and resulted in a violation of his right to "religious freedom." *See* Compl. at 4–5.

### C. Discussion

The Court has reviewed Ledezma's Complaint and for the reasons explained below, finds that it fails to state a plausible claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison,* 668 F.3d at 1112; *Wilhelm,* 680 F.3d

at 1121, 1123.

### 1. First Amendment Free Exercise Claim

"The Free Exercise Clause of the First Amendment, as made applicable to the States by the Fourteenth Amendment, forbids government from 'prohibiting the free exercise' of religion." *Fuqua v. Raak*, 120 F.4th 1346, 1352 (9th Cir. 2024). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted).

"In ruling on a prisoner's First Amendment free exercise claim, [the Court must] first determine whether the challenged prison policy or practice substantially burdened the prisoner's free exercise of his or her religion." *Long*, 91 F.4th at 1337; *see also Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ("A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion."). "'A substantial burden . . . places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Jones*, 791 F.3d at 1031–32 (brackets and citation omitted).[2]

---

[2] If a prisoner establishes a substantial burden, the Court must apply the "four factors set forth in [*Turner v. Safley*, 482 U.S. 78 (1987)] to determine whether the burden was 'reasonably related to legitimate penological interests.'" *Long*, 91 F.4th at 1337 (quoting *Turner*, 482 U.S. at 89). The four *Turner* factors that bear on whether a legitimate penological interest exists are: "(1) whether there is a valid, rational connection between a state interest and the prison regulation [or restriction]; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged regulation" or restriction. *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (citing *Turner*, 482 U.S. at 89–90). However, while the weighing of these factors will be required before Ledezma can prevail on the merits of any free exercise claim, the Court finds the *Turner* analysis premature at the initial pleading stages. *See Salazar v. Cnty. of Los Angeles*, No. CV-15-09003-MWF-JC, 2016 WL 11746844, at *8 (C.D. Cal. Sept. 27, 2016) ("Whether the [alleged constitutional deprivations] are reasonably related to legitimate penological interests goes to the merits of Plaintiff's claim, not whether they have stated a claim.") (citing *Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) (noting that questions going to the merits of First Amendment claim are not appropriately resolved on the pleadings); *Dunn v. Castro*, 621 F.3d 1196, 1205 n.7 (9th Cir. 2010) ("We . . . decline to render

Additionally, a prisoner must allege that (1) his "'proffered belief [is] sincerely held'; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quoting *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Fuqua*, 120 F.4th at 1352 ("An inmate asserting a Free Exercise claim must first show that he or she has a sincerely held religious belief that was impinged by government action."). The Ninth Circuit has "consistently held that the failure to provide food consistent with a prisoner's sincerely held religious beliefs constitutes a substantial burden on the prisoner's free exercise." *Long*, 91 F.4th at 1337 (citing *Shakur v Schriro*, 514 F.3d 878, 881–82 (9th Cir. 2008)).

Ledezma sufficiently alleges he has a sincerely held religious belief, and that as part of his conversion to Judaism, he must comply with the laws of the Torah governing the "type of foods to be consumed, [and] how they are to be consumed, prepared and kept." *See* Compl. at 3. He further contends the failure to provide him with a kosher diet imposed a substantial burden on the practice of his faith. *Id.* at 4. He fails to allege, however, that either Defendant Ramirez or Palmer, who he identifies merely as the "reviewing authorities" responsible for processing his CDCR inmate grievances inquiring into the status of his July 20, 2024 CDCR 3030-R Religious Meal Alternative or Religious Kosher Diet Request, may be held liable for causing any First Amendment violation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must [] demonstrate that the defendant's conduct was the actionable cause of the claimed injury."); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each

---

any decision on the application of *Turner* to the facts at issue in this case [at the Rule 12(b)(6) stage]); *Sims v. Biter*, No. 1:14-CV-00131 AWI, 2015 WL 269215, at *2 (E.D. Cal. Jan. 21, 2015) ("The *Turner* analysis is beyond the scope of a 12(b)(6) motion."), *aff'd*, No. 15-15895, 645 Fed. Appx. 555, 2016 WL 1128109 (9th Cir. Mar. 23, 2016); *Hightower v. Tilton*, No. C08-1129-MJP, 2012 WL 1194720, at *7 (E.D. Cal. Apr. 10, 2012) ("[I]t is inappropriate to require a complaint to address [*Turner*] factors at the motion to dismiss stage.").

individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff] complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, while Ledezma identifies Ramirez and Palmer as the "reviewing authorities" responsible for processing his CDCR 602 grievances, he fails to include in his pleading any facts sufficient to plausible suggest either Ramirez or Palmer were the persons ultimately responsible for processing his religious diet requests or determining whether he *qualified* for a religious meal accommodation in the first place. *See Thomas-Weisner v. Gipson*, No. 3:19-CV-01999-JAH-BGS, 2020 WL 6271207, at *4 (S.D. Cal. Oct. 26, 2020) (dismissing prisoner's free exercise claims religious meal accommodation claims *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1) where his complaint failed to allege "Defendants were members of the RCC," or "played any direct role in the decision to deny or remove Plaintiff from the RMA [Religious Meal Alternative Diet Program]."). Instead, Ledezma contends only that Ramirez and Palmer failed to properly respond to the grievances he filed inquiring as to the status of the religious meal diet requests he "sent in thorough [RJD's] institutional mail." *See* Compl. at 2, 3; ECF 1-2 at 5–8, 10–11, 13–15.

In short, while Ledezma has a First Amendment right to "be provided with food sufficient to sustain them in good health [and] satisfy[y] the dietary laws of [his] religion," *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987), he enjoys no constitutional right to an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances could not be held liable under

§ 1983). "[W]here a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983." *Wright v. Shapirshteyn*, No. CV 1-06-0927-MHM, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009).

Pursuant to Cal. Code Regs. tit. 15, § 3054.6, "[a]ny incarcerated person who claims to require a religious diet consisting of either the Religious Meat Alternate or Religious Kosher Diet Programs shall be responsible for completing and signing a CDCR Form 3030-R (07/24), Religious Meat Alternative or Religious Kosher Diet Request, . . . *and submitting it to any Chaplain, or an RRC [Religious Review Committee] (RRC) designee.*" Cal. Code Regs. tit. 15, § 3054.6(a) (emphasis added). As noted above, Ledezma claims to have completed and submitted his CDCR Form 3030 "through the institutional mail service," but he does not further allege to have addressed his request to a chaplain or RRC designee.[3] *See* Compl. at 3. Nor does Ledezma claim either Defendant Ramirez or Palmer were chaplains, members of the RRC, or in any way responsible for approving or denying his request for a religious diet. *See Thomas-Weisner,* 2020 WL 6271207, at *4. In fact, Ledezma's exhibits show Ramirez determined that while Ledezma had failed to submit a

---

[3] "Incarcerated persons may request participation in the RK [Religious Kosher] Diet Program in accordance with Title 15, section 3054.6." Cal. Code Regs. tit. 15, § 3054.5(b). "Only Jewish inmates, as determined by a Jewish Chaplain, may participate in the JKDP [Jewish Kosher Diet Program]." Cal. Dept. Corr. & Rehab., Operations Manual, Ch. 5, Art. 51, § 54080.14 ("Institution Religious Diet Program"), (2024). "The Chaplain or designated representative of the Religious Review Committee (RRC) shall: (1) Interview the incarcerated person requesting the religious diet program by utilizing CDCR Form 3030-E (Rev. 07/24), Religious Meat Alternate or Religious Kosher Program Interview[…] [and] (2) Determine the incarcerated person's religious diet eligibility for placement into the appropriate [Religious Diet] program. The Chaplain may *approve* the request or refer it to the RRC for determination." Cal. Code Regs. tit. 15, § 3054.6(b) (emphasis added). "Only the RRC may *deny* the CDCR Form 3030-R, Religious Meat Alternative or Religious Kosher Diet Request." Cal. Code Regs. tit. 15, § 3054.6(d) (emphasis added). "The RRC shall be comprised of designated chaplains, and a correctional captain or their designee." Cal. Code Regs. tit. 15, § 3210(d).

"GA-22" Request for Interview with a chaplain,[4] a chaplain *was* nevertheless assigned to interview him, evaluate his CDCR 3030 Request, and to submit it to the Religious Review Committee (RRC) for review on March 26, 2025. *See* ECF No. 1-2 at 14–15.

      Critically, Ledezma does not explain what the chaplain or the RRC ultimately decided with respect to his request for a kosher diet; nor does he name the chaplain or any RRC designee as a party. Instead, he seeks to sue only the grievance officials assigned to respond to his CDCR 602 appeals complaining of a delay in responding to his religious diet request. *See* ECF No. 1-2 at 5–6. The Ninth Circuit has held that correctional institutions may require an inmate to complete an application in order to receive kosher meals without violating the First Amendment. *See Resnick v. Adams*, 348 F. 3d 763, 771 & n.8 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) ("It is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs.")). Delays inherent in processing religious meal requests, as Ledezma appears to attribute to inmate appeals reviewers Ramirez and Palmer, do not by themselves violate a prisoner's right to free exercise. *See e.g.*, *Green v. Paramo*, No. 18-CV-00480-BAS-AGS, 2018 WL 6062359, at *4 (S.D. Cal. Nov. 20, 2018) (five-month delay in processing religious diet application not unconstitutional); *Taylor v. Pelican Bay*, No. C 07-639 MHP (PR), 2010 WL 2671989, at *8 (N.D. Cal. July 2, 2010) (two-month delay in processing religious diet not unconstitutional even after plaintiff was previously approved for a religious diet at another prison and required to participate in verification process); *see also Woods v. Paramo*, No. 3:17-CV-02595-CAB-WVG, 2019 WL 3532831, at *6 (S.D. Cal. Aug. 2, 2019) (finding RJD's Jewish chaplain entitled to summary judgment with

---

[4] "[W]hen [an] inmate or parolee seeks a response to an issue related to his or her confinement," he may "request interviews with staff and/or request items and services via a CDCR Form 22, Inmate/Parolee Request for Interview, Item or Service." Cal. Dept. Corr. & Rehab., Operations Manual, Ch. 5, Art. 52 § 54090.4 ("Written Request Process") (2024). After completing the CDCR Form 22 describing his or her request, "[t]he inmate shall deliver or mail via institutional mail the completed form to any staff member who is able to respond to the issue." *Id.*, § 54090.4.2 ("Submission").

respect to prisoner's free exercise claim based on thirty day delay in receipt of kosher diet).

For these reasons, the Court finds Ledezma fails to state a plausible free exercise claim as to either inmate grievance reviewers Ramirez or Palmer. *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123.

### 2. Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment prohibits the State from denying "equal protection of the laws" to any person within its jurisdiction. U.S. CONST. amend. XIV, § 1. It provides that states must treat all similarly situated people in a protected class, including religion, equally. *Shakur*, 514 F.3d at 891; *see also Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) ("The Constitution's equal protection guarantee ensures that prison officials cannot discriminate against particular religions." (internal citations omitted)). The Equal Protection Clause does not, however, require that "all prisoners must receive identical treatment and resources." *Hartmann v. Cal. Dep't of Corrs. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted). Instead, to state a claim under § 1983 for a violation of the Equal Protection Clause, Ledezma must allege that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal citation omitted); *Hartmann*, 707 F.3d at 1123.

Here, Ledezma claims only that "Donovan Correctional Facility" has "continued to refuse to provide [him with] the same religiously mandated diet [it] provide[s] numerous other inmates who practice the same religion," and has "treat[ed] Plaintiff differently than other inmates who practice Judaism at th[e] same facility." Compl. at 5. As was true with respect to his free exercise claim, however, Ledezma fails to allege inmate grievance reviewers Ramirez or Palmer were the persons responsible for processing his CDCR 3030 Kosher Diet Request, for determining whether he qualified, or for causing him to be treated differently. *See Leer,* 844 F.2d at 633; *Iqbal*, 556 U.S. at 676 ("[In] § 1983 suits, a plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution.").

Further, while the Equal Protection Clause does protect prisoners from intentional discrimination on the basis of religion, *Freeman*, 125 F.3d at 737, Ledezma fails to include any further factual allegations to plausibly suggest Defendants Ramirez or Palmer reviewed, delayed, or denied his CDCR 602 grievances with the intent or purpose of discriminating against him because of his faith. *Furnace,* 705 F.3d at 1030. "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). Ledezma must plead intentional discrimination with respect to each named defendant. *See OSU Student All. v. Ray*, 699 F.3d 1053, 1074 (9th Cir. 2012) (noting that "invidious discrimination under the Equal Protection Clause and the First Amendment Free Exercise Clause" requires specific intent); *see also Royzman v. Lopez*, No. 21-CV-1429-BAS-AHG, 2023 WL 2026537, at *9 (S.D. Cal. Feb. 15, 2023) (dismissing Jewish prisoner's equal protection claims involving denial of tefellin where "[t]he only allegations as to [the Defendant] [was] that he interviewed Plaintiff following the filing of [an] administrative grievance, asked Plaintiff questions relating to his grievance, and informed Plaintiff that he would communicate any further issues."). He has not, and instead contends only broadly that he was treated differently—suggesting that his rights were violated simply because he knows other inmates in his housing facility have been approved for kosher meals. *See* Compl. at 5. "To infer intentional discrimination from these minimal allegations is too far a leap." *Royzman*, 2023 WL 2026537, at *9.

Therefore, the Court also dismisses Ledezma's equal protection claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123.

3. <u>Eighth Amendment Cruel and Unusual Punishment Claim</u>

Finally, to the extent Ledezma claims the refusal to provide him with a religiously mandated diet amounts to cruel and unusual punishment as proscribed by the Eighth Amendment, he also fails to state plausible claim for relief. *See* Compl. at 5.

The Eighth Amendment protects prisoners from inhumane methods of punishment

and conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). A prisoner's claim does not rise to the level of an Eighth Amendment violation, however, unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

Adequate food is a basic human need protected by the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). "Food is one of life's basic necessities," and the government is obligated to provide those in its custody "with adequate sustenance on a daily basis." *Foster v. Runnels*, 554 F.3d 807, 812–14 (9th Cir. 2009). "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Thus, the circumstances, nature, and duration of the deprivation is critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of an Eighth Amendment violation. *Id*. (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

As pleaded, Ledezma's Complaint fails to include any facts whatsoever to suggest either Defendant Ramirez or Palmer deprived him of any of life's minimal "necessities." *Rhodes*, 452 U.S. at 347. His exhibits show he requested a specific kosher diet religious accommodation in July 2024, but Ledezma does not allege any facts to plausibly suggest he was deprived of food, adequate nutrition, or any other any basic human need at any time. *See Hudson*, 503 U.S. at 8–9. And while the Eighth Amendment requires prisons to furnish meals with adequate nutrition, Ledezma fails to allege either Defendant Ramirez or Palmer denied him food sufficient to sustain his health. *See Hoptowit,* 682 F.2d at 1246.

Without more, the lack of access to a specific religious diet does not violate the Eighth Amendment.  *See Kidwell v. Collins,* No. 1:22-CV-00709-JLT-CDB PC, 2023 WL 9549913, at *7 (E.D. Cal. Nov. 3, 2023); *Buskirk v. Johnson*, No. CV 21-9065-MWF (JEM), 2023 WL 6851734, at *4 (C.D. Cal. May 31, 2023) ("Plaintiff's lack of access to a specific religious diet was not an unconstitutional condition of confinement that violated the Eighth Amendment" where the mainline diet Plaintiff did receive was not inadequate), *report and recommendation adopted*, 2023 WL 6851737 (June 27, 2023); *White v. Krantz*, No. 1:20-cv-00892-NONE-GSA-PC, 2021 WL 4206545, at *8 (E.D. Cal. Sep. 16, 2021) (finding plaintiff failed to state an Eighth Amendment claim based on allegations that he was denied a kosher diet for 50 days and occasionally was not provided a sack lunch after religious fasts); *Monson v. Steward*, No. 2:15-cv-00513-PK, 2017 WL 2882709, at *8 (D. Or. July 6, 2017) ("The denial of a kosher diet simply does not rise to the level of 'unnecessary and wanton infliction of pain'"); *Burton v. Clark*, No. 1:09-cv-00061-DLB (PC), 2009 WL 3254897, at *4 (E.D. Cal. Oct. 8, 2009) (holding plaintiff failed to state an Eighth Amendment claim based on allegations he received food that was "inadequate . . . to his religious beliefs").

Further, Ledezma does not allege facts sufficient to show that either grievance reviewer Ramirez or Palmer acted with "deliberate indifference" to a serious risk to his health or safety when they reviewed his CDCR 602 grievances complaining of delay and/or a or lack of response to his CDCR 3030 religious meal requests.  *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 298–99.  Thus, the Court also dismisses Ledezma's Eighth Amendment claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1). *See Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121, 1123.

### III. CONCLUSION

For the reasons discussed, the Court:

1) **GRANTS** Ledezma's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 3).

2) **ORDERS** the Secretary of the CDCR, or his designee, to collect from

Ledezma's trust account the $269.10 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in his account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov; and

4) **GRANTS** Ledezma forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Ledezma's Amended Complaint must be complete by itself without reference to his original pleading. Any Defendant not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Ledezma fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: December 2, 2025

Honorable Barry Ted Moskowitz
United States District Judge